IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARY GROMER,                        §
                                    §
                Plaintiff,          §
                                    §  Civil Action No. 3:11-CV-0682-D
VS.                                 §
                                    §
JANET MACK, GUARDIAN FOR            §
VALMA MARIE STOKLEY, AN             §
ALLEGED INCAPACITATED               §
PERSON,                             §
                                    §
                Defendant.          §

MEMORANDUM OPINION
AND ORDER

The instant motion to remand this case removed from county probate court presents

the question whether this court has subject matter jurisdiction and whether removal was

objectively unreasonable and therefore justifies an award of attorney's fees, expenses, and

just costs under 28 U.S.C. § 1447(c). Concluding that the court lacks subject matter

jurisdiction and that removal was objectively unreasonable, the court grants the motion to

remand and awards relief under § 1447(c).

I

Plaintiff Mary Gromer ("Gromer") and defendant Janet Mack ("Mack") are daughters

of Valma Marie Stokley ("Stokley"), who is incapacitated. Gromer and Mack became

involved in a bitter guardianship dispute over Stokley, *see In re Guardianship of Stokley*, No.

PR-10-447-2 (Prob. Ct. No. 3, Dallas County, Tex.), when Mack applied to be appointed

temporary guardian of Stokley's person and estate. While the guardianship proceeding was

pending, Mack and Gromer had a disagreement about whether Stokley should be placed in an assisted-living facility. Mack applied for a temporary restraining order ("TRO"), temporary injunction ("TI"), and permanent injunction ("PI") against Gromer seeking to prevent her from coming near Stokley and prohibiting her from using any of Stokley's property or financial instruments. The probate court granted Mack's *ex parte* application for a TRO and later granted a TI and a PI. Each order required that Stokley remain in the jurisdiction of the probate court and prevented Gromer and/or anyone acting on her behalf from coming within 100 yards of Stokley, taking possession of, selling, or converting Stokley's property, or using any credit cards or other financial instruments of Stokley. The probate court later found that Gromer had violated the TRO and TI, after hearing Mack's testimony that Gromer removed Stokley from her Texas residence after the TRO was in effect and failed to return her when the TI was issued.

After the probate court granted a PI, Gromer challenged the decision. She unsuccessfully petitioned the state court of appeals for a writ of mandamus. After the probate court appointed Mack to be Stokley's guardian, Gromer moved unsuccessfully to have the probate court dissolve the PI. She was again unsuccessful in obtaining a writ of mandamus from the court of appeals. Gromer appealed the probate court's decision denying her motion to dissolve the PI. The court of appeals ordered the parties to mediation, but this was also unsuccessful.

Meanwhile, because Gromer had filed a motion for rehearing in the probate court after filing the notice of appeal, the parties prepared for an April 2011 evidentiary hearing. Mack

intended to argue that the case should be abated because the probate court had lost plenary power over the matter due to the pending appeal. Just minutes before the hearing was set to begin, Gromer filed a notice of removal, removing the matter to this court.

The parties dispute whether Gromer had adequate notice of the orders and injunctions and whether Gromer had sufficient opportunity to present her arguments in the hearings determining Mack's requests for injunctive relief and motion for sanctions. Gromer alleges that Mack has gone beyond what the probate court's order required: not only requiring Gromer to stay at least 100 yards away from Stokley, but also refusing any form of contact or communication between Gromer and Stokley. Gromer asks this court to order that she have access to her mother and find that her substantive due process rights to associate with family were violated under *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), on the basis that Mack has refused to allow her any access to her mother and the probate court has refused to intervene or alter the injunctive relief granted in Mack's favor. Gromer also asks this court to find that the probate court violated her procedural due process rights under the Texas Constitution and the United States Constitution during the guardianship proceedings by depriving her of liberty without adequate notice and hearing. In particular, she alleges that she received inadequate service of process regarding the TRO hearing and had no notice of the TRO before moving her mother to California. She also avers that she was not permitted to offer evidence of inadequate process at a hearing addressing the need for a TI, where Gromer's violation of the TRO was discussed. Gromer also argues that the probate court's handling of the TI hearing, the PI hearing, the hearing on Gromer's motion to

dissolve the PI, and a hearing to determine whether Gromer should be sanctioned for violating the TRO violated her rights because she was not given an opportunity to present witnesses or evidence and was given inadequate time to cross-examine adverse witnesses.

Mack moves to remand, contending, *inter alia*, that the court lacks subject matter jurisdiction,[1] and she seeks an award of attorney's fees and expenses under 28 U.S.C. § 1447(c). Gromer opposes the motion, arguing that the court has federal question jurisdiction.

## II

Gromer maintains that the court has subject matter jurisdiction because this case involves a federal question: namely, the violation of her substantive and procedural due process rights under the Fourteenth Amendment.

---

[1]Mack also contends that removal was untimely. The court need not address this ground of Mack's motion.

Additionally, Mack did not move to remand on the ground that Gromer is aligned *as the plaintiff*. Under 28 U.S.C. §§ 1441(a) and 1446(a), *only defendants* in the underlying state court action can remove a lawsuit to federal court. *See* 14B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3721, at 42-44 (4th ed. 2009) (noting that only defendants can remove). Because Mack did not raise this issue in her motion to remand, this procedural defect is waived, although Mack's challenge to the court's subject matter jurisdiction is not waived. *See* 28 U.S.C. § 1447(c) (requiring motion to remand on basis of any defect other than lack of subject matter jurisdiction to be made within 30 days after filing of notice of removal, but permitting remand at any time before final judgment if it appears that district court lacks subject matter jurisdiction); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1063 (5th Cir. 1992) ("[A] waiver of defects in removal does not waive the fundamental requirement of original subject matter jurisdiction.").

A

"Federal courts are courts of limited jurisdiction.  [A court] must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995) (citations omitted).  "Doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Article III, Section 2, Clause 1 of the United States Constitution provides, in relevant part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority[.]"  "Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, [the Supreme Court] has long construed the statutory grant of federal-question jurisdiction as conferring a more limited power." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (citations omitted).

"[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint,'" and "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Id.* at 808 (citing *Franchise Tax Bd. v.*

*Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)). "Since a defendant may remove a case only if the claim could have been brought in federal court, 28 U.S.C. § 1441(b), moreover, the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Id.*

The "arising-under" provision for federal-question jurisdiction is invoked "by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). But a court may determine that a state-law claim "arises under" federal law if the state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

## B

Mack brought the underlying probate court guardianship case to obtain appointment of temporary guardianship over Stokley and related relief. Mack's claims in the probate court unquestionably did *not* arise under federal law. The court must therefore decide whether it has federal question jurisdiction under *Grable*.

## C

Despite citing *Grable* in her notice of removal, Gromer fails to address, or even to acknowledge, the requirements of *Grable* in her response to Mack's motion to remand. This is insufficient to demonstrate that the court has federal question-based removal jurisdiction.

*See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 338 (5th Cir. 2008) (concluding that merely stating that state-law claim raises a "disputed and substantial question of federal law" and that claim implicates "strong federal interest" is insufficient to satisfy *Grable* when defendant did not identify state claim that met the three requirements of *Grable*). Mere presence of a potential federal issue in a state cause of action does not automatically confer federal-question jurisdiction, *Merrell Dow*, 478 U.S. at 813; *Grable*, 545 U.S. at 314, and there is a "need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction," *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

Moreover, the court concludes that the underlying state law claim in the probate court proceedings does not necessarily raise a "*stated* federal issue." *Grable*, 545 U.S. at 314 (emphasis added). None of the state court pleadings provided by the parties states on its face the federal issue of a violation of substantive or procedural due process rights under the United States Constitution. Indeed, the alleged procedural due process violations that serve as the predicates for removability occurred *during* the course of the guardianship proceeding, meaning that any violation of Gromer's right to procedural due process could not have been stated as a part of Mack's well-pleaded complaint initiating the probate court matter involving their mother. By contrast, in cases such as *Grable*, the underlying state-law claim expressly stated its dependence on legal standards defined by federal law. *See, e.g.*, *Grable*, 545 U.S. at 314-15 (noting that Grable premised his superior title claim in state court on "a failure by the IRS to give it adequate notice, as defined by federal law," such that "notice

within the meaning of the federal statute" was an essential element of the quiet title claim); *Singh*, 538 F.3d at 338 (acknowledging in dicta that the "necessarily raise" prong of *Grable* is "probably satisfied" where plaintiff brought state legal malpractice claim with a "suit within a suit" requirement, where in order to prove legal malpractice plaintiff was required to establish that underlying federal suit would have been won but for malpractice); *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 552 (5th Cir. 2008) (noting that boilerplate request for attorney's fees, even where attorney's fees were only available under federal law, did not confer subject matter jurisdiction on federal courts).

Nor can Gromer argue that Mack's probate court application omitted any mention of substantial federal issues by artful pleading.[2] "[T]he artful pleading doctrine applies *only* where state law is subject to complete preemption." *Id.* at 561 (citing *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188-89 (5th Cir. 2001)). "Federal question jurisdiction exists where, because the state law is completely preempted, 'there is, in short, no such thing as a state-law claim.' In contrast, under the well-pleaded complaint rule, a '*defense* that relies on . . . the pre-emptive effect of a federal statute will not provide a basis for removal.'" *Id.* (internal citations omitted) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 11 (2003)); *Beneficial Nat'l Bank*, 539 U.S. at 9 n.5 ("[T]he proper inquiry [for

---

[2]The "artful pleading" doctrine is an "independent corollary" to the well-pleaded complaint rule. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). "Under this principle, even though the plaintiff has artfully avoided any suggestion of a federal issue, removal is not defeated by the plaintiff's pleading skills in hiding the federal question." *Bernhard*, 523 F.3d at 551 (citing *Rivet*, 522 U.S. at 475).

determining preemption] focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable.").

Mack's guardianship application is not "preempted" by the Fourteenth Amendment. Even assuming *arguendo* that there is merit to Gromer's allegations of due process defects, the post-filing procedural defects in the probate court proceeding would not extinguish the state-law claim on which the proceeding is based. The analysis on preempted causes of action lacks pertinence, of course, because Gromer's due process challenge is actually being used to challenge the actions of the probate court in adjudicating Mack's claims.[3]  Nor can the court conclude that Mack's application for guardianship "necessarily" raised an actually disputed constitutional issue based on the possibility that the probate court might deprive Gromer of a constitutional right.

D

Under 28 U.S.C. § 1441(b), a defendant can remove a case only if the claim could originally have been brought in federal court, and neither party maintains that a guardianship application governed by state law could have been filed initially in a federal district court. Indeed, had Gromer made such an argument, the court could not have accepted it without "disturbing [a] congressionally approved balance of federal and state judicial

_____

[3]If Gromer were to argue that a guardianship dispute necessarily raises questions of substantive due process, the court would reject any suggestion that every application for guardianship necessarily raises an *actually disputed* constitutional issue regarding a family's associational substantive rights of the type contemplated in *Moore*, 431 U.S. 494.

responsibilities." *Grable*, 545 U.S. at 314.

Probate matters have traditionally been governed by the individual states. The statutory probate courts of Texas are specialized courts determined by the Texas Legislature to have original and exclusive jurisdiction over their designated counties' probate matters. *See* Tex. Prob. Code Ann. § 4A(a) (West Supp. 2010) ("All probate proceedings must be filed and heard in a court exercising original probate jurisdiction."); Tex. Estates Code Ann. § 606(d) (West Pamp. Supp. 2009) ("In those counties in which there is a statutory probate court, all applications, petitions, and motions regarding guardianships . . . shall be filed and heard in the statutory probate court.").[4] It is doubtful that the Supreme Court in *Moore*, in extending substantive due process rights to certain choices of family association, contemplated that federal courts would usurp the role of specialized state probate courts in guardianship proceedings.[5] And Gromer has cited no authority to support the conclusion that

---

[4] In pointing out that Texas has structured its statutory probate courts to have exclusive jurisdiction over guardianship actions, the court acknowledges that "[u]nder our federal system, Texas cannot render its probate courts exclusively competent to entertain a [non-probate claim, such as a tort claim]" merely because the dispute arises out of events in the probate proceeding. *See Marshall v. Marshall*, 547 U.S. 293, 314 (2006). The court simply notes the specialized functions and jurisdiction of these courts as an indication of the unbalancing of federal and state judicial responsibilities if guardianship proceedings were deemed to be adjudicable in federal court under Gromer's theory that such actions on their face necessarily raise a substantive due process question based on a family's associational rights.

[5] In rejecting the premise that a state-law guardianship proceeding necessarily raises a federal question, the court does not foreclose the possibility that a federal court could exercise subject matter jurisdiction over a guardianship case that presented a federal question, or in a diversity jurisdiction case where no exception applied. *See, e.g.*, *Turton v. Turton*, 644 F.2d 344, 347 (5th Cir. Unit A Apr. 1981) (acknowledging that "[a]s a general matter

- 10 -

Congress has conferred federal question jurisdiction over guardianship proceedings based on the mere potential that the adjudication of such a proceeding could give rise to a federal question claim.

E

In sum, the court concludes that it does not have federal-question jurisdiction over this case because it would not have had subject matter jurisdiction over the state guardianship application had it been filed initially in this court. The constitutional due process violations alleged in Gromer's notice of removal are challenges to the probate court's adjudication of the proceeding before it, not claims that Mack is asserting. The state guardianship application does not "necessarily raise" a "federal" issue, the constitutional due process violations alleged in the notice of removal are not actually in dispute in the guardianship application, and permitting state guardianship actions to be heard in a federal court would

_____

a diversity court has jurisdiction to entertain any civil action that could be brought in a state court," but mindful of limits imposed by probate exception).

As clarified in *Marshall*, the judicially created probate exception to federal jurisdiction "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court," *Marshall,* 547 U.S. at 312, but it does not bar federal courts from adjudicating matters that are outside those confines and are otherwise within federal jurisdiction. *Cf. Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 859-60 (7th Cir. 2007) (extending probate exception analysis to domestic relations exception, in similar case involving plaintiff's attempt to sue in federal court to challenge state guardianship outcomes based on due process challenge, noting that typical adversary proceedings involving domestic relations are like nonadversary proceedings because they are *in rem* in character—i.e., fights over a person in the court's control—and that a court that does not control the *res* should not be permitted to interfere). In the present case, the dispute is over precisely the *res* that is currently before the county probate court in the guardianship proceeding. *See* Tex. Estates Code Ann. § 604 (West Pamp. Supp. 2009) (noting that administration of estate of incapacitated person is proceeding *in rem*).

unbalance the respective roles of the federal and state courts, as defined by Congress. Therefore, the court grants Mack's motion to remand.

## III

Having decided that the case was not removable, the court now considers whether Mack is entitled to an award of attorney's fees, expenses, and just costs under 28 U.S.C. § 1447(c).

## A

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *In re Enable Commerce, Inc.*, 256 F.R.D. 527, 533 n.14 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Furthermore,

> [t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Martin*, 546 U.S. at 140.

B

For the reasons discussed above, the court holds that Gromer's attempt to remove this case was objectively unreasonable. Despite citing *Grable* in her notice of removal, Gromer entirely failed to address the requirements of *Grable* in response to Mack's remand motion. Gromer devotes most of her response brief to the argument that this court should establish new precedent that a substantive due process right exists under the Fourteenth Amendment guaranteeing an adult's access to her parent. She makes no attempt to explain how—even if such a constitutional right were found to exist—the underlying guardianship action necessarily stated such a federal issue in view of the well-pleaded complaint rule, whether such a right was actually disputed in the guardianship application, and whether extending federal jurisdiction to guardianship application proceedings would disturb any congressionally approved balance of federal and state judicial responsibilities. Gromer would not have needed to look very far to find clear precedent in each of the three prongs of the *Grable* analysis indicating that her asserted bases for federal question jurisdiction were objectively unreasonable.

Furthermore, Gromer relies on allegations of unconstitutional deprivation of substantive and procedural due process, even though such arguments clearly function as challenges to the probate court's adjudication of the proceeding Mack initiated, not as claims stated in Mack's well-pleaded complaint, or, as *Grable* requires, claims by Mack that necessarily raise a stated federal issue, actually disputed and substantial. This was also objectively unreasonable.

The court therefore grants Mack her attorney's fees, expenses, and just costs under 28 U.S.C. § 1447(c).

\* \* \*

Mack's motion to remand is granted because this court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). This action is remanded to Probate Court No. 3 of Dallas County, Texas. The clerk shall effect the remand in accordance with the usual procedure. Mack shall recover from Gromer her reasonable attorney's fees, expenses, and just costs incurred in procuring the remand of this action. Mack must file her fee application within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

June 30, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE